**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**BRIAN RAY DINNING,**

          **Petitioner,**

v.                              **CRIMINAL ACTION NO. 2:12-cr-84
                                 CRIMINAL ACTION NO. 2:12-cr-140**

**UNITED STATES OF AMERICA,**

          **Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Brian Ray Dinning's ("Petitioner") Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. No. 2:12cr84, ECF No. 130; Dkt. No. 2:12cr140, ECF No. 117. For the following reasons, Petitioner's Motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

At the time of the offenses in question, Petitioner was an attorney with a LL.M. in taxation who specialized in international tax law. Using the pretext of an investment opportunity in several real estate ventures and social enterprises, as well as support for a non-profit charitable organization, Petitioner fraudulently obtained $2,048,489.50 from at least 29 contributors. Dkt. No. 2:12cr140, ECF No. 68 at ¶¶ 11–12. Petitioner also obtained financing on a home mortgage and a vehicle by making fraudulent representations to Village Bank regarding his employment and liabilities. *Id.* at ¶ 14. The total loss caused by the sum of Petitioner's fraud is $2,270,952.36. *Id.* at ¶¶ 15–19. On June 6, 2012, Petitioner was charged in Case No. 2:12cr84 with twenty-five counts of Wire Fraud, in violation of 18 U.S.C. § 1343. Dkt. No. 2:12cr84, ECF No. 1. On September 19, 2012, Petitioner was charged in Case No. 2:12cr140 with two counts of Bank Fraud, in violation of 18 U.S.C. § 1344. Dkt. No. 2:12cr140, ECF No. 1. On June 3, 2013, Petitioner pleaded guilty

to Count 2 of Case No. 2:12cr84 and Count 19 of Case No. 2:12cr140. Dkt. No. 2:12cr84, ECF Nos. 53–54; Dkt. No. 2:12cr140, ECF Nos. 55–56.

On October 7, 2013, Petitioner was sentenced to 70 months on Count 2 of Case No. 2:12cr84 and 80 months on Count 19 of Case No. 2:12cr140, to be served consecutively to one another. Dkt. No. 2:12cr84, ECF No. 78; Dkt. No. 2:12cr140, ECF No. 70. On December 23, 2019, Petitioner filed a motion seeking relief under the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"). Dkt. No. 2:12cr84, ECF No. 130; Dkt. No. 2:12cr140, ECF No. 117; *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018). The Government filed its response April 10, 2020, which was timely because of the extension granted pursuant to General Order 2020-7. Dkt. No. 2:12cr140, ECF No. 124, 124-1. Petitioner filed his reply on April 10, 2020. Dkt. No. 2:12cr140, ECF No. 125. To date, Petitioner has served approximately 115 months of his 150 month sentence, assuming the award of all credits available to Petitioner. *See* Dkt. No. 2:12cr140, ECF No. 124-1 at 14, n. 2. As such, this matter is ripe for disposition.

## II. LEGAL STANDARD

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, A petitioner seeking compassionate release is generally required exhaust his or her administrative remedies prior to bringing a motion before the district court ("the exhaustion requirement"). *Id.*

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if

2

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" has been defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. The Sentencing Commission has provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission has also provided a "catch-all provision" that allows for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D); *see also United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"); *United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."). However, a petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in Application Note 1, in evaluating a petitioner's request for a sentence modification under the "catch-all provision."

### III. DISCUSSION

Petitioner requested the Bureau of Prisons to file a motion in support of his request for relief pursuant to § 3582(c)(1)(A)(i) on November 15, 2019. Dkt. No. 2:12cr140, ECF No. 117-2. No action was taken by the Bureau of Prisons within 30 days. Accordingly, the exhaustion

3

requirement is satisfied.

Because he does not qualify for a sentence reduction based on medical condition, age, or family circumstances as defined by U.S.S.G. § 1B1.13, n. 1 (A)–(C), Petitioner relies on the "catch-all provision" of U.S.S.G. § 1B1.13, n. 1 (D) in support of his Motion. In so doing, Petitioner advances the following combination of factors in support of his request for relief: (1) his deteriorating vision; (2) his rehabilitation, as evidenced by his clean institutional record and educational endeavors in prison; (3) his family situation, including his relationship with his children and his parents' health; and (4) his restitution order. *See* Dkt. No. 2:12cr140, ECF No. 117. In his reply, Petitioner further contends that he has heart disease and "is at a greater risk for contracting [COVID-19] and at a greater risk of stroke and/or heart attack." Dkt. No. 2:12cr140, ECF No. 125 at ¶ 2. The Government opposes Petitioner's motion, focusing on the need for specific deterrence, the fact that Petitioner does not qualify for relief under a rigid application of U.S.S.G. § 1B1.13, n. 1 (A)–(C), and the argument that compassionate release should only apply to "the rare defendant." Dkt. No. 2:12cr140, ECF No. 124-1 at 13–15.[1]

The ongoing global pandemic may form an extraordinary and compelling reason for a sentence reduction for a petitioner with "a serious medical condition which substantially increases the risk of severe illness [upon contraction of] COVID-19." *United States v. Zukerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) *quoting United States v. Rodriguez,* 2020 WL 1627331,

---

[1] The Court notes that *United States v. Maldonado* was decided prior to the passage of the FIRST STEP Act, which fundamentally alters the petitioning procedure for compassionate release by allowing either the Director of the Bureau of Prisons *or the defendant* to petition the district court for relief. The purpose of this procedural modification was to further increase the use of compassionate release, although the Sentencing Commission has not altered its policy statement to account for the changes initiated by the FIRST STEP Act. This makes the Sentencing Commission's policy statement outdated, though it may still provide helpful guidance to the Court. Accordingly, this Court has the discretion to provide relief to petitioners who do not fall directly within the Sentencing Commission's current policy statement. *See United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020). Therefore, the reasoning employed by the *Maldonado* court is outdated in light of the purpose of the FIRST STEP Act and the procedural changes it initiated.

at *7 (E.D. Pa. Apr. 1, 2020). Accordingly, the confluence of a petitioner's medical conditions and the COVID-19 pandemic may constitute an extraordinary and compelling reason for sentence modification under the "catch-all provision," even when a petitioner's medical conditions would not qualify under Application Note 1.A. *Zukerman*, at *8. However, U.S.S.G. § 1B1.13(2) advises that a petitioner should not be granted a sentence modification without a determination that the petitioner is not a danger to the community. *See also* 18 U.S.C. § 3142(g) (outlining the factors to be considered in assessing a defendant's pretrial detention status as referenced by U.S.S.G. § 1B1.13(2)).

Notwithstanding the challenges presented by the COVID-19 pandemic, it is apparent that Petitioner still presents the same threats to the community today as were present at the time of his conviction and sentencing. In his request for relief, Petitioner diminishes his wrongdoing by characterizing the instruments of his fraud as "legitimate." *Compare* Dkt. No. 2:12cr140, ECF No. 117 at ¶ 3 ("The nature and circumstances of [Petitioner's] conduct were mitigated by the legitimate missions and social work he was doing in Africa and that he was otherwise a good lawyer with a clean professional record") *with* Dkt. No. 2:12cr140, ECF No. 56 at ¶ 1 ("Although some of the work toward achieving these projects was legitimate, the defendant made materially false statements about how *all* of the investment monies would be used.") (emphasis added) *and* Dkt. No. 2:12cr140, ECF No. 119 at ¶ 22 ("Petitioner misrepresented that he was acting on behalf of a charitable organization…[and] used his position as a tax attorney and special skills set to commit the instant offense").

Now in the instant matter, Petitioner seeks relief based on his desire to "work as a tax consultant, pastor, natural health practitioner, or lawyer" and continue his "missions work" in Africa. Dkt. No. 2:12cr140, ECF No. 117 at ¶¶ 14, 17. However, the Court is unimpressed by

5

Petitioner's contention that he should be released to work in positions of trust given the substance of his past criminal behavior, his present diminishing of that criminal behavior, and the extreme unlikelihood that he will ever be licensed to practice law again. The Court also finds irony in Petitioner's representation that his vision is poor enough that it should be considered a factor in his request for a sentence modification while simultaneously arguing that it is good enough to act in the aforementioned professional capacities. *See* Dkt. No. 2:12cr140, ECF No. 117 at ¶ 8 (describing the state of Petitioner's vision); *see generally* Dkt. No. 2:12cr140, ECF No. 125 (finding Petitioner's legible and handwritten reply).

In sum, Petitioner's stated desire to act as a steward for the legal, financial, and charitable interests of others once again after being released early for crimes he does not fully acknowledge represents a danger that he will once again use his expertise to defraud others. While the provisions of U.S.S.G. § 1B1.13(2) are not binding on the Court, its advisement that relief should be prohibited to a petitioner who poses an ongoing danger to the community is controlling in the Court's resolution of the instant matter.

The Court is also at liberty to consider the ongoing danger posed by the COVID-19 pandemic in its resolution of Petitioner's Motion. However, Petitioner is not particularly vulnerable to COVID-19, as he is 55 years old and has not provided documentation that he has been diagnosed with a serious medical condition. *See United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) ("the most susceptible age category [is] over 60 years of age"); *see also United States v. Muniz*, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (listing arterial hypertension as a condition placing an individual at higher risk for severe COVID-19 infection).[2] Instead, Petitioner relies on an unsubstantiated claim that he suffers from

---

[2] Arterial hypertension is defined as the chronic accumulative effects of long-standing high blood pressure on such vital organs as the heart, kidney, and brain. *Chronic Hypertensive Disease*, STEDMANS MED. DICTIONARY (2014).

hypertension, based on a prescription for atorvastatin for his high cholesterol.[3] *See* Dkt. No. 2:12cr140, ECF No. 117 (finding no mention of any serious heart condition or health ailment other than poor vision in Petitioner's original Motion); *see also* Dkt. No. 2:12cr140, ECF No. 119 at ¶ 44 (Petitioner's PSR states that "he has no history of any serious chronic medical conditions or illnesses, no prior hospitalizations, no allergies, and is currently not taking any prescribed medications"). Therefore, the Court finds that the dangers posed by the COVID-19 pandemic do not overcome the conclusion that Petitioner represents an ongoing danger to the community.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
April 16, 2020

United States District Judge

---

[3] While high cholesterol may contribute to an increased risk of heart attack, stroke, or other heart complications, a treatment regimen for high cholesterol is often preventative and not necessarily indicative of a more severe condition. *See* Sanjai Sinha, M.D., *Atorvastatin*, DRUGS.COM (Nov. 1, 2019) https://www.drugs.com/atorvastatin.html.